■ In the Matter of MARCY RR. and Others, Children Alleged to be Neglected. SCHUYLER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CAROLYN SS. et al., Respondents. DANIEL J. FITZSIMMONS, as Law Guardian, Appellant. [770 NYS2d 200]—

Kane, J. Appeals (1) from an order of the Family Court of Schuyler County (Argetsinger, J.), entered September 4, 2003, which, inter alia, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10, to adjudicate respondent Carolyn SS.'s children to be neglected, and (2) from an order of said court, entered September 4, 2003, which

granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of said children.

This case deals with the proper placement of seven children who were neglected by their mother, respondent Carolyn SS. The neglect finding was entered on consent after the mother used drugs and failed to attend counseling sessions, in violation of a previous adjournment in contemplation of dismissal. In an unrelated criminal proceeding, the mother was incarcerated and would be required to participate in an in-patient rehabilitation program for many months either in lieu of or following a jail term. In previous neglect proceedings, respondent Richard RR., the father, consented to orders which severely limited or prohibited his contact with the children. Several people filed custody petitions, including the maternal grandfather, petitioner Jap SS., who lives in Georgia. At the time of the joint hearing on the grandfather's custody petition and neglect disposition, the children were temporarily separated and living with three different family friends or relatives, none of whom were approved foster care providers.

Following the hearing, Family Court issued two orders. The order under Family Ct Act article 10 contained a finding of neglect based on the mother's consent and placed her under the supervision of petitioner Department of Social Services (hereinafter DSS) pursuant to Family Ct Act § 1057. The other order, under Family Ct Act article 6, was entered on consent of the mother, father, grandfather and DSS, but opposed by the Law Guardian. It granted joint custody to the mother and grandfather, physical placement with the grandfather, visitation to both parents, and required the grandfather to open a preventive services file with his local social services agency. The Law Guardian appeals.

The Law Guardian first contends that Family Court entered a disposition not authorized by Family Ct Act § 1052, the section which delineates possible dispositions after a finding of neglect. This contention is incorrect. Although the custody placement with the grandfather was not an authorized neglect disposition, the court did not make such placement under Family Ct Act article 10, but under Family Ct Act article 6. The court's disposition on the neglect petition was an order of DSS supervision of the mother (*see* Family Ct Act § 1057), a disposition which is statutorily authorized (*see* Family Ct Act § 1052 [a] [v]).

Placement with the grandfather was in the children's best interests. The Law Guardian does not dispute that the children should be with their grandfather, but argues that Family Court should have made such a placement under Family Ct Act § 1055

instead of under Family Ct Act article 6. According to the Law Guardian, an article 10 placement would have been in the children's best interests because the New York courts would retain jurisdiction, DSS would be required to provide services to the children and grandfather, and DSS would have been required to "undertake diligent efforts to encourage and strengthen the parental relationship" (Family Ct Act § 1055 [c]).

A Family Ct Act article 10 placement with an out-of-state relative is problematic because it requires adherence to the Interstate Compact on the Placement of Children (Social Services Law § 374-a). DSS's foster care worker testified that after a determination to place the children with an out-of-state relative under article 10, the children would have to be temporarily placed with certified foster care providers in New York (*see* 18 NYCRR 431.6) pending approval under the interstate process, which generally takes four to six months. As the family members and friends caring for the children at the time of the hearing were not certified foster care providers, the children would have been removed and placed elsewhere. No single foster care placement would be available for seven children, so they would be separated and most likely moved to different school districts. Although the Family Ct Act provides an emergency method for immediate investigation and placement with a relative within 24 hours (*see* Family Ct Act § 1017 [2] [a] [ii]), that procedure is not applicable to an out-of-state placement under the interstate compact. Compact regulations permit a "priority placement," but the procedure is fairly lengthy and the children here do not meet the conditions which would entitle them to such an expedited placement (*see* regulation 7 of Assn of Administrators of Interstate Compact on Placement of Children).

As is often the case, Family Court found it necessary to opt for one of two less-than-ideal choices. On one hand, it would be preferable for the court to retain jurisdiction over the children, require DSS to provide services to the grandfather and children, possibly subsidize that placement, and require DSS to undertake diligent efforts to reunite the children with their mother. On the other hand, it was preferable for the children to have a stable home immediately rather than bouncing between temporary foster placements for months, to be with a relative rather than strangers, and to be all together rather than separated.

Family Court formulated the best possible outcome considering the available options. The court avoided the delays inherent in any placement under Family Ct Act article 10 by instead

placing the children with the same relative under Family Ct Act article 6. This allowed the children to stay together and immediately be placed with a relative. The court mitigated the lost advantages of a Family Ct Act § 1055 placement by including provisions in the two orders keeping the mother under DSS supervision, requiring the grandfather to open a preventive services case with the local social services agency in Georgia and cooperate with DSS as long as the mother is under DSS supervision, granting the mother joint custody with the grandfather, providing the mother visitation with DSS approval, and requiring the mother to notify DSS before seeking a custody modification in any state. Under the circumstances, Family Court crafted the best possible disposition for these children.

Cardona, P.J., Crew III, Mugglin and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.