[804 NYS2d 83]

In the Matter of TRISTRAM K., a Child Alleged to be Neglected. JING K., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent, et al., Respondent.

In the Matter of GAIL K.H., Respondent, v JING X., Also Known as JING K., Appellant.

In the Matter of LING MEI X., Petitioner, v JING K., Appellant, and GAIL K.H., Respondent, et al., Respondents.

In the Matter of GAIL K.H., Respondent, v JING X., Also Known as JING K., Appellant.

First Department, November 17, 2005

## APPEARANCES OF COUNSEL

*Shenlaw.com Law Firm, LLC,* Flushing (*Jianming Shen* of counsel), and *Sanctuary for Families' Center for Battered Women's Legal Services,* New York City (*Mary Rothwell Davis* of counsel), for appellants.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Jane L. Gordon* and *Edward F.X. Hart* of counsel), for ACS, respondent.

*Gail K.H.,* pro se, and *James F.X. Hiler,* New York City, for Gail K.H., respondent.

*Steven Banks, The Legal Aid Society,* New York City (*Judith Stern* and *Nicole Bingham* of counsel), *Law Guardian.*

*Robert F. Wayburn,* New York City, for Councilman John C. Liu, amicus curiae.

## OPINION OF THE COURT

ELLERIN, J.

This appeal presents the unhappy consequences of inattention to the interplay between article 6 and article 10 of the Family Court Act.

The child in question is Tristram K., born May 29, 2000, to the respondent mother and her now deceased husband. Following a consolidated hearing on the disposition of a neglect finding against both parents, and on custody petitions filed by Tristram's paternal aunt and maternal grandmother, Family Court granted permanent custody to the aunt on the neglect petition and on her custody petition, denied the grandmother's petition for custody/visitation, and issued a protective order against the mother in favor of the aunt. The court subsequently denied the mother's motion for vacatur of the order of custody. All but the order denying the grandmother's custody petition must be reversed.

Initially, we note that, while portions of the record of these proceedings are missing, contrary to the aunt's contention, the five-volume appendix—which she could have supplemented—together with the parties' briefs and the extensive motion practice before this Court permit meaningful review of the issues presented.

The order granting permanent custody to the aunt on the neglect petition must be reversed as an unauthorized disposition under the Family Court Act.

Child protective proceedings are governed by article 10 of the Family Court Act, which sets forth five basic dispositions available to a court upon the conclusion of a neglect or abuse fact-finding proceeding: (i) suspended judgment, (ii) release of the child to the custody of his parents or other person legally responsible, (iii) placement of the child for up to one year with a relative or other suitable person, (iv) issuance of an order of protection, and (v) placement of the respondent parent under supervision (§ 1052 [a]). Permanent termination of parental rights, adoption, guardianship and custody are governed by article 6 of the Family Court Act. The disposition ordered here, i.e., release of the child into the care of a relative for an indefinite period of time and an award of permanent custody to the relative, is not authorized under article 10 (*see Matter of Linda J. v Nakisha P.*, 10 AD3d 287, 287 [2004] [vacating order and remanding for dispositional hearing because "(i)n awarding custody to petitioner pursuant to Family Court Act article 6, the court never reached the question of disposition pursuant to Family Court Act article 10"]).

In view of the fact that the mother was incarcerated in Westchester County pending her trial for custodial interference and was therefore not in a position to care for the child and the fact

that the child was already living with the aunt, the proper disposition on the neglect petition was placement of the child with the aunt for up to one year, pursuant to Family Court Act § 1052 (a) (iii) and § 1055. Section 1055 authorizes a court to make successive extensions of such a placement for additional periods of up to one year each, upon a determination, at a permanency hearing, that an extension of placement is consistent with the best interests of the child. Among the factors the court must consider in determining whether an extension of placement is consistent with the best interests of the child is whether the child would be at risk of abuse or neglect if returned to the parent (§ 1055 [b] [iv] [B] [2]). Moreover, the court may direct a child protective agency to undertake "diligent efforts to encourage and strengthen the parental relationship when it finds such efforts will not be detrimental to the best interests of the child," and such efforts include "encouraging and facilitating visitation with the child by the parent," and the court may require such agency to assist the parent in obtaining "adequate housing, employment, counseling, medical care or psychiatric treatment" (§ 1055 [c]).

An order of temporary placement with the aunt would have best served the child's best interests by insuring that the case reappeared before the court for reassessment of his adjustment to the aunt's home and of the mother's emotional and psychiatric progress, and by making possible permanency planning with the mother, including the provision of necessary services and appropriate visitation to strengthen the parental relationship, as contemplated by article 10 and specified in section 1055. Instead, in the absence of the oversight mandated by section 1055, the aunt, without informing the law guardian or the court, removed the child from the jurisdiction and placed him with caregivers who had never been evaluated either by the court or by a child protective agency and whose identity and location remain unknown to the law guardian.

More than 2¹/₂ years have passed since the aunt was awarded permanent custody on the neglect petition and circumstances have changed (see Matter of Michael B., 80 NY2d 299, 318 [1992]). Tristram is no longer living with his aunt, and there has been no assessment of his present home life or his current emotional and psychological status. Moreover, he has had no contact with his mother for nearly three years and there has been no new information about her emotional, psychological and financial status. Thus, a new dispositional hearing must be

held to assess the current situation and determine whether temporary placement with his current caregivers, with services and visitation to the mother, or one of the other alternatives provided for in section 1052 (a) is the most appropriate disposition.

The order granting permanent custody to the aunt under article 6 must be reversed because it was made in the absence of a full evidentiary hearing and a proper finding of either extraordinary circumstances or the best interests of the child.

> "[I]ntervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 549 [1976]).

The burden of proving extraordinary circumstances is upon the party seeking to divest the natural parent of custody (*Matter of Darlene T.*, 28 NY2d 391, 394 [1971]). Once extraordinary circumstances are found, the court must still determine the best interests of the child before the natural parent may be displaced (*Matter of Male Infant L.*, 61 NY2d 420, 427 [1984]). But it is only upon a finding of extraordinary circumstances that the court may proceed to inquire into the best interests of the child and to order a custodial disposition on that ground (*Bennett*, 40 NY2d at 549).

Here, the court acknowledged that the issue of extraordinary circumstances was not even litigated and that the court did not make the requisite finding before rendering the custody order. Indeed, although the burden of proving extraordinary circumstances rested on the aunt, she presented no evidence at all on her custody petition. And although the mother neither willfully refused to appear nor waived her appearance, she was not even afforded the opportunity to be present in court. When the custody issue was addressed, on March 20, 2003, the mother was incarcerated in Westchester County because she had not returned the child after visitation. However, even an incarcerated parent has a right to be heard on matters concerning her child, where there is neither a willful refusal to appear nor a waiver of appearance (*see Matter of Kendra M.*, 175 AD2d 657, 658 [1991]). In this case, the court made no effort to have her

produced, citing budgetary constraints. Nor was any effort made to explore reasonable alternatives, such as arranging for her to participate in a telephone conference (*see Matter of Joseluise Juan M.*, 302 AD2d 219 [2003], *lv denied* 100 NY2d 508 [2003]). Instead, the court offered the mother's attorney the option of waiving the mother's appearance and having a guardian ad litem appointed, which counsel reasonably rejected.

Had a full evidentiary hearing been held, with all parties having the opportunity to participate, the mother could have challenged the evidence that was presented as to her ability to care for her son or presented her own evidence in rebuttal. For example, she could have explained her reasons for leaving the jurisdiction with Tristram, which resulted in the custodial interference charge and ultimate conviction. Such an explanation might have offered insight into the prevailing state of affairs at the time that she fled and a fuller picture of all the facts and circumstances relevant to a disposition on the custody petitions.

We note that even if there had been a finding of extraordinary circumstances to support an award of custody to a nonparent, questions about the aunt's willingness to take permanent custody of the child raised a concern as to whether such an award was in the child's best interests—a well-founded concern, as it turned out, in light of her subsequently removing the child from the jurisdiction and leaving him with other individuals.

Instead of making a finding of extraordinary circumstances based on the petitioning party's evidence demonstrating such circumstances and the responding party's rebuttal of that evidence and presentation of its own evidence, the court, in the absence of any evidence submitted by the aunt as to extraordinary circumstances and in the mother's absence from the hearing, "assumed that we had it." The biological parent may not be supplanted with a nonparent on that basis. Thus, a new evidentiary hearing must be had to determine, based on the parties' factual submissions, with the aunt bearing the burden of proof and the mother having the opportunity to challenge the aunt's evidence and present her case, whether extraordinary circumstances exist to support an award of custody of Tristram to a nonparent (*see Matter of Tolbert v Scott*, 15 AD3d 493 [2005]).

We note that Tristram, who is now almost $5^{1}/_{2}$ years old, has had no contact with his mother for nearly three years (*see Bennett*, 40 NY2d at 550-551). Indeed, the law guardian acknowl-

edged in June 2004, in joining the mother on her motion to vacate or modify the custody order, that given the long separation between the mother and the child, their immediate reunification was not appropriate, and requested that the process begin with supervised visitation between them.

Visitation must be premised upon a consideration of the best interests of the child (*Parker v Ford*, 89 AD2d 806, 806 [1982]), and visitation with a biological parent is presumed to be in the child's best interests (*Matter of Vann v Vann*, 187 AD2d 821 [1992]). Thus, the denial of visitation is a drastic measure and visitation will be denied only where there are compelling reasons and substantial evidence that it would be detrimental to the child's welfare (*Matter of Rodriguez v Medina*, 277 AD2d 144 [2000]). Here, no evidence was presented that seeing and interacting with his mother would be detrimental to Tristram's well being. The security concerns that the court cited in denying the mother and the grandmother's repeated requests for visitation can be allayed by arranging for supervised visitation in a secure setting.

The law guardian points out that now that he has started school, Tristram soon will learn that he is not the biological child of his present caregivers and will want to know who his biological parents are, and that if his mother's efforts to establish a relationship with him are thwarted, he may one day wonder whether she intentionally abandoned him and may feel anger and resentment toward his caregivers for depriving him of access to her. Accordingly, a hearing must be had immediately to determine, based on evaluations of Tristram's current living situation and the mother's emotional and psychiatric status, whether reinstating visitation is in Tristram's best interests and, if so, how the resumption of visits should be initiated and conducted. The issue of supervised visitation between the child and his maternal grandparents should also be explored at the hearing.

The court properly denied the grandmother's petition for custody as it was uncontroverted that the grandmother lived in a senior citizen complex in which children are not permitted to reside.

The order of protection should be vacated forthwith. Although the order expired March 19, 2004, the mother's appeal therefrom is not academic, because the implied finding underlying the order may indirectly affect her status in future proceedings (*see Matter of S. Children*, 231 AD2d 573, 574 [1996], *lv denied*

89 NY2d 809 [1997], *cert denied sub nom. Singh v Commissioner of Social Servs.*, 521 US 1125 [1997]; *Matter of H. Children*, 156 AD2d 520 [1989]). The mother was ordered to refrain from "assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats or any criminal offense against [the aunt]," despite the absence of any evidence that she had ever engaged in or threatened to engage in any such conduct against the aunt.

Accordingly, the order of the Family Court, New York County (Sara P. Schechter, J.), entered on or about March 20, 2003, which, following a determination that, inter alia, respondent mother neglected the child, directed the release of the child to the custody of petitioner aunt, and order, same court and Judge, also entered on or about March 20, 2003, which granted the aunt's petition for custody and awarded her custody of the child, and order, same court and Judge, entered on or about August 6, 2004, which denied the mother's application seeking vacatur of the order of custody, should be reversed, on the law, without costs, and vacated, and the matters remitted to Family Court for an immediate hearing on visitation for the mother and an expedited new dispositional and custody hearing. The order, same court and Judge, entered on or about March 20, 2003, which denied petitioner grandmother's petition, after a hearing, for custody/visitation, should be affirmed, without costs. The order, same court and Justice, entered on or about March 20, 2003, and effective until March 19, 2004, which directed that the mother have no contact with the aunt, should be reversed, on the law, without costs, and vacated.

SULLIVAN, J.P., WILLIAMS, GONZALEZ and McGUIRE, JJ., concur.

Orders (two papers), Family Court, New York County, entered on or about March 20, 2003, and order, same court, entered on or about August 6, 2004, reversed, on the law, without costs, and vacated, and the matters remitted to Family Court for an immediate hearing on visitation and an expedited new dispositional and custody hearing. Order, same court, entered on or about March 20, 2003, denying the petition of the grandmother for custody/visitation, affirmed, without costs. Order, same court, entered on or about March 20, 2003, directing that the mother have no contact with the aunt, reversed, on the law, without costs, and vacated. Motion seeking leave to file amicus reply brief denied.