■ In the Matter of JACQUELINE SHARON L., Respondent, v PAMELA G., Appellant, and ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [810 NYS2d 143]—

Order, Family Court, New York County (Sara P. Schechter, J.), entered on or about July 22, 2003, which, after a child custody hearing determination that petitioner maternal aunt was entitled to custody of appellant mother's two children, Jason G. and Jasmine G., placed the children in her permanent custody, unanimously reversed, on the law, without costs, and the matter remanded for a full evidentiary hearing on the issue of whether extraordinary circumstances exist to justify divesting appellant mother of custody of her children.

On April 4, 2003, petitioner maternal aunt Jacqueline L., a North Carolina resident, filed petitions alleging that, in the best interests of the subject children, custody should be placed with her, and that the Administration for Children's Services (ACS) had advised her to so file. At the time of the petition, the children had been living in North Carolina with maternal relatives for more than two years.

They were initially brought to North Carolina by appellant mother in early 2001 shortly before neglect proceedings were

initiated against her. On August 13, 2001, following a hearing, a finding of neglect was entered against appellant mother based upon evidence that she hit Jason G. with a belt and her fist, bruising him. The children were remanded to the grandmother's custody pending North Carolina's approval of the placement pursuant to the Interstate Compact on the Placement of Children (Social Services Law § 374-a). On December 7, 2001, the court further ordered that appellant mother undergo parenting skills, anger management, and individual counseling.[1]

On April 25, 2002, ACS advised the court that North Carolina had rejected the grandmother as a foster parent, because of her advanced age, and that it would begin exploring the possibility of direct placement of the children with the grandmother. ACS reported that the children were thriving under the grandmother's care and that appellant mother had been cooperative. The court confirmed that the children wished to stay in North Carolina, and that Jason G. spent part of the time with the maternal aunt (petitioner aunt) who had children of her own. Accordingly, the court modified its dispositional order, on consent, from placement of the children with ACS to a direct placement with the grandmother, until February 13, 2003.

On July 11, 2002, ACS raised the issue of obtaining approval for petitioner aunt to be a backup or the primary caretaker since North Carolina had rejected the grandmother on the grounds of age. Appellant mother opposed this idea. The court issued an order placing the children directly with the grandmother for the remainder of the placement term. The court also confirmed that the permanency goal remained reunification of the children with their mother.

On October 30, 2002, ACS again raised the issue of a custody award to petitioner aunt. ACS claimed that it had lost contact with appellant mother; and that it had information that appellant mother had not completed anger management or individual counseling. Appellant mother claimed that ACS had stopped contacting her. She further averred that she saw the children whenever her mother could arrange it, and that she visited them in North Carolina or had them brought to her.

On February 7, 2003, ACS informed the court that it intended to amend the notices it filed on that date to indicate that the permanency goal had changed to placement with petitioner aunt. ACS averred that the children were doing well and were living with the grandmother, who lived near petitioner aunt, and that they spent time with petitioner aunt on a regular basis.

---

1. This Court affirmed in *Matter of Jason G.* (3 AD3d 340 [2004], *lv denied* 2 NY3d 702 [2004]).

A combined child custody, extension of placement, and permanency hearing was held on April 4, 2003. At the time, Jason G. was six years old and Jasmine G. was 2½ years old. During the May 9, 2003 adjourn date, ACS averred that it would support the placement of custody in petitioner aunt or the grandmother. Appellant mother opposed the idea and complained that the entire proceedings were erroneously brought because she had never hit Jason G. During the July 21, 2003 adjourn date, petitioner aunt was excused from appearing. At that point, the subject children had begun to reside with petitioner aunt.

ACS caseworker Suzette Bernard testified that appellant mother had selected her relatives in North Carolina as a resource, and had placed the children there herself. Bernard's conversations with appellant mother revealed that she continued to deny neglecting Jason G. Moreover, Bernard indicated that appellant mother had completed only the parenting skills portion of the service plan assigned to her, but still had not completed anger management and individual counseling.

Appellant mother testified that she had completed a parenting skills course but experienced various difficulties with service providers, including a disruption in her Medicaid eligibility. She admitted that at the inception of the neglect case, she believed that the best place for the children was with her mother and maternal relatives. Nevertheless, recent tension had led her to feel that petitioner aunt was not the appropriate caretaker for them and to seek an alternative resource in New York. She claimed that her relatives often changed their minds about whether they wanted to care for the children and, by way of illustration, relayed an incident where petitioner aunt telephoned her and pleaded that she take Jason G. back despite being aware that this would result in his placement in nonkinship foster care.

On July 21, 2003, the court awarded petitioner aunt custody of the children. The court further approved the discharge of the children to a fit and willing relative as the permanency plan. The court did not make a finding as to extraordinary circumstances. By order dated July 22, 2003, the court placed the children in petitioner aunt's permanent custody. The order noted that respondents had admitted the allegations of the petition.

Appellant mother now argues that a proper evidentiary hearing with respect to the issue of extraordinary circumstances was not held. We agree, and for the following reasons reverse, and remit for a proper evidentiary hearing on the issue of extraordinary circumstances.

We recently held in *Matter of Tristram K.* (25 AD3d 222

[2005]) that: "[I]ntervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child.

"The burden of proving extraordinary circumstances is upon the party seeking to divest the natural parent of custody. Once extraordinary circumstances are found, the court must still determine the best interests of the child before the natural parent may be displaced. But it is only upon a finding of extraordinary circumstances that the court may proceed to inquire into the best interests of the child and to order a custodial disposition on that ground" (*id.* at 226 [internal quotation marks and citations omitted]).

Thus, the instant fact-finding determination of neglect was an insufficient ground upon which to deny appellant mother custody; to prevail, petitioner was required to demonstrate extraordinary circumstances.

In *Tristram*, the paternal aunt petitioned under Family Court Act article 6 for custody of parents respondents' son. The court held a consolidated hearing on the disposition pursuant to a fact-finding neglect determination and the custody petition. The petitioner did not present evidence in support of the petition. This Court reversed and ordered a new evidentiary hearing to determine, based on the parties' factual submissions, whether extraordinary circumstances were present.[2] The aunt would have the burden of proof and the respondent mother would have the opportunity to challenge the aunt's evidence.

In this case, it is undisputed that petitioner did not present evidence against appellant, as petitioner was excused from appearing in the matter before the hearing had actually commenced, and that the court did not make a finding as to extraordinary circumstances. Thus, it cannot be said that in this case a full evidentiary hearing explored the issue of whether extraordinary circumstances existed (*see Matter of Bennett v Jeffreys*, 40 NY2d 543, 549 [1976] [requiring a judicial finding of extraordinary circumstances after the issue is fully litigated]). Concur—Sullivan, J.P., Nardelli, Catterson, McGuire and Malone, JJ.

---

**2.** As appellant notes, the order appealed from erroneously states that appellant admitted the allegations in the petition. The court erred by including that language as the record demonstrates that appellant presented a vigorous opposition to the allegations.