Matter of Logan AA (2006 NY Slip Op 26504)

Matter of Logan AA

2006 NY Slip Op 26504 [14 Misc 3d 690]

December 15, 2006

Lawliss, J.

Family Court, Clinton County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, April 24, 2007

[*1]
In the Matter of Logan AA, a Child Alleged to Be Neglected. Heather Rivers et al., Respondents.
In the Matter of Ida Bailey, Petitioner, v Heather Rivers et al., Respondents.
Family Court, Clinton County, December 15, 2006

APPEARANCES OF COUNSEL

[*2]
Ida Bailey, petitioner pro se. John Dee, Plattsburgh, for Clinton County Department of Social Services, respondent. Omshanti Parnes, Plattsburgh, Law Guardian, for Logan AA. Edward D. Meyer, Plattsburgh, for Heather A. Rivers, respondent. Meredith A. Neverett, Plattsburgh, for Jason Covel, respondent.

OPINION OF THE COURT

Timothy J. Lawliss, J.
On October 30, 2006, the Clinton County Department of Social Services (DSS) filed a Family Court Act article 10 petition alleging neglect of the subject child by the child's mother and father. Prior to the filing of the petition, by orders dated October 26, 2006, this court (McGill, J.) had temporarily removed the subject child upon prepetition application by the Department of Social Services under the emergency provisions of Family Court Act article 10. On October 31, 2006, this court (Lawliss, J.) issued a temporary order continuing the removal of the subject child and placing the subject child in foster care. Also on October 31, 2006, Ida Bailey, the subject child's paternal aunt filed a Family Court Act article 6 petition seeking custody of the subject child. Ms. Bailey has not moved to intervene in the article 10 proceedings. The question before the court is how to proceed on these multiple filings under articles 10 and 6 concerning the same child.
In the Third Department, the first case that must be addressed concerning the interaction of articles 10 and 6 is Matter of Felicity II. v Lance RR. (27 AD3d 790 [3d Dept 2006]). Although this court has previously expressed its concerns regarding the consequences of the Third Department's holding in Felicity II. (see, Matter of Crystal A., 13 Misc 3d 235 [Sup Ct, Clinton County 2006]), the holding nevertheless appears clear. When an article 10 proceeding has resulted in a final order of disposition which places the child outside of the care of the parents pursuant to Family Court Act § 1055, the court may not entertain an article 6 petition by a nonparent for custody as long as the child remains placed and the permanency goal remains reunification with a parent. (27 AD3d at 791-792.)
Although it appears that the rationale used to support the holding in Felicity II. would apply as well prior to the issuance of a final order of disposition, the Third Department has expressly limited its holding to the entertaining of article 6 petitions after a final order of disposition has been issued pursuant to Family Court Act §§ 1051 and 1055, and, thereby, distinguished its earlier holding in Matter of Marcy RR. (2 AD3d 1199 [3d Dept 2003]). In the pending actions, because there is no final order of disposition entered in the article 10 proceeding, Felicity II. does not resolve the issue as to how to proceed with the current filings.
Recently the Third Department issued another decision addressing the interactions between proceedings brought under articles 10 and 6. (Matter of Donna KK. v Barbara I., 32 AD3d 166 [3d Dept 2006].) In Donna KK., the Department of Social Services filed an article 10 petition alleging that a mother had neglected her child. In that neglect proceeding, the child was temporarily placed in foster care. Shortly thereafter, the child's grandmother commenced an article 6 proceeding to obtain custody of the child. Prior to the article 10 fact-finding hearing, the Family Court conducted a trial on the grandmother's article 6 petition. At [*3]the conclusion of the article 6 trial, the trial court granted custody to the grandmother. The article 6 custodial order was stayed by the Appellate Division and the Family Court subsequently conducted a fact-finding hearing in the article 10 proceeding. The trial court found that the mother had, in fact, neglected the subject child and conducted a dispositional hearing. Referring to its prior custody determination, the trial court made no placement determination in the dispositional phase of the neglect proceeding.
On appeal, the Appellate Division reversed and ruled that the trial court abused its discretion when it heard and decided the grandmother's custody application before resolving the issue of neglect raised by the article 10 proceeding.[FN1]

The holding in Donna KK. indicates it would be proper for the trial court to conduct the article 10 fact-finding hearing prior to making a determination on a nonparent's custody petition and then to "consider the custody application with the dispositional phase of the neglect proceeding." (32 AD3d at 169.) There are several aspects of the Donna KK. decision which this court finds confusing or troubling.
First, this court notes that in Donna KK. the Court states "this case is distinguishable from [Felicity II.] because DSS did not apply to terminate respondent's parental rights" (32 AD3d at 168 [citations omitted]). Neither Donna KK. nor Felicity II. involved a termination of parental rights proceeding. Thus, this statement is difficult to understand.
Second, Donna KK. states that it would be a more efficient use of judicial resources to consider custody applications with the dispositional phase of the neglect proceeding because "a finding of neglect would have supplied the threshold extraordinary circumstances needed by the grandmother and permitted DSS to more fully explore the appropriateness of the child's placement with her due to the wider range of hearsay evidence which is admissible at the dispositional phase." (32 AD3d at 169.) Although the facts in Donna KK. may well have established the threshold extraordinary circumstances needed by the grandmother, the implication that a neglect finding will necessarily in all cases supply the threshold extraordinary circumstances required in Matter of Bennett v Jeffreys (40 NY2d 543 [1976]) appears to be at odds with both the holdings in Bennett and subsequent cases. The Court of Appeals in Bennett held that "intervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect" (Bennett v Jeffreys, 40 NY2d at 549 [emphasis added]).
What constitutes neglect is defined by Family Court Act § 1012 (f). What constitutes "persistent neglect" is not defined by the Family Court Act. Case law, however, does provide [*4]some guidance. In Matter of Bisignano v Walz (164 AD2d 317, 319 [3d Dept 1990]), the Court held that "persistent neglect sufficient to rise to the level of an extraordinary circumstance also requires a showing of statutorily defined permanent neglect (Social Services Law § 384-b [4])" (internal quotation marks omitted). Pursuant to Social Services Law § 384-b (7) (a) a permanently neglected child is "a child . . . whose parent . . . has failed . . . substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so" (emphasis added; see also, Matter of Cornell v Cornell, 290 AD2d 735, 737 [3d Dept 2002] [wherein the Court found "we are unable to discern any evidence in this record that petitioner is guilty of neglecting her child, let alone guilty of the 'persistent neglect' which is the standard enunciated in Matter of Bennett v Jeffreys"]; Matter of Jacqueline Sharon L. v Pamela G., 26 AD3d 250, 253 [1st Dept 2006] [wherein the Court held that "the instant fact-finding determination of neglect was an insufficient ground upon which to deny appellant mother custody; to prevail, petitioner was required to demonstrate extraordinary circumstances"]). Since historically a single finding of neglect as that term is defined by section 1012 of the Family Court Act does not necessarily constitute the extraordinary circumstances required by Bennett v Jeffreys, in many cases the efficiency gains contemplated in Donna KK. may not materialize.
Third, the direction to consider the custody application within the dispositional phase of the neglect proceeding also appears to be problematic from a practical approach. In making that direction, Donna KK. cites with approval Marcy RR. In Marcy RR., the Court conducted a joint hearing on a nonparent's custody petition and the neglect disposition. For evidence to be admissible during an article 10 dispositional hearing, the evidence needs only to be material and relevant, it need not be competent. (Family Ct Act § 1046 [c].) For evidence to be admissible during an article 6 custody trial, the rules of competency apply (albeit with some modifications). As a practical matter, it seems highly problematic to expect the court to conduct a joint hearing using two different rules of evidence. At this joint hearing, if the type of hearsay is offered which is inadmissible during the article 6 trial but admissible at an article 10 dispositional hearing, it places a heavy burden on the single judge conducting the single hearing. It also creates the potential for a single judge at a single hearing to reach substantially different conclusions as to what serves the child's best interest based upon the different evidence the judge must consider in the context of each proceeding. Such an outcome would, at best, be confusing to the litigants and the public.
Fourth, in Donna KK., part of the Court's rationale for holding that the trial court abused its discretion by addressing the article 6 petition prior to the article 10 fact-finding is that
"requiring DSS to defend its custody under Family Ct Act article 10 in a hearing under Family Ct Act article 6 frustrated its duty to plan for the child's return to respondent. Once the child was removed from respondent's custody and as long as she remained in foster care, DSS was obligated to use reasonable efforts to reunite respondent and her child." (32 AD3d at 168.)
This rationale appears to assume that (1) DSS must defend its custody in an article 6 proceeding, and (2) if DSS defends its custody, DSS is violating its duty to work for reunification. This court respectfully disagrees with both apparent assumptions.
DSS should be permitted to choose whether or not to defend its custody. Even when the child is in the Department of Social Services' custody and the permanency goal is reunification with the parent, it is at least possible that the best interest of the child will be served by changing the orders and awarding permanent custody to a nonparent as opposed to keeping the child in [*5]foster care and creating an obligation on the Department of Social Services to work towards reunification with the parent. When such a change would be in the best interest of the child, couldn't—indeed shouldn't—the Department of Social Services advocate for the permanent placement of a child with a nonparent?
To the extent that permitting the Department of Social Services to advocate for a disposition that it believes serves the best interest of the child contradicts its concurrent obligation to work for reunification with a parent, this court suggests that the contradiction is inherent in the overall structure of the Social Services Law and Family Court Act articles 10 and 10-A. Doesn't the very act of offering evidence at fact-finding to prove neglect or abuse conflict with the goal of reunification? The inherent conflict results from the dual goals of safety of children and maintaining family units.
Fifth, and perhaps most problematic, the direction in Donna KK. to conduct a joint hearing concerning both the nonparent's article 6 custody petition and the dispositional hearing in the article 10 proceeding renders the requirements of Family Court Act § 1035 (f) irrelevant.[FN2]

Family Court Act § 1035 (f) states:
"The child's adult sibling, grandparent, aunt or uncle not named as respondent in the petition, may, upon consent of the child's parent appearing in the proceeding, or where such parent has not appeared then without such consent, move to intervene in the proceeding as an interested party intervenor for the purpose of seeking temporary or permanent custody of the child, and upon the granting of such motion shall be permitted to participate in all arguments and hearings insofar as they affect the temporary custody of the child during fact-finding proceedings, and in all phases of dispositional proceedings. Such motions for intervention shall be liberally granted."
Obviously, a nonparent who has filed an article 6 custody petition is a party to their own article 6 custody proceeding. They have a right to fully participate during the trial on their petition. On the other hand, Family Court Act § 1035 (f) precludes a nonparent from participating at the dispositional hearing unless (1) the nonparent moves the court for permission to intervene in the article 10 proceeding; (2) the appearing parents consent to the nonparent's participation as an intervening party; and (3) the court in its discretion grants the application to intervene. Without the consent of the appearing parents, the court is not even permitted the discretion to grant an application to intervene (see, Matter of Tristram K., 36 AD3d 147, 2006 NY Slip Op 07995 [1st Dept 2006]).
Aside from the evidentiary complications pointed out above, a joint hearing on both a nonparent's article 6 custody petition and the article 10 dispositional hearing is the functional equivalent of an article 10 dispositional hearing in which the nonparent's application to intervene has been granted. Both types of hearings would have the same parties participating: DSS, parents, law guardian and nonparent. Both types of hearings would have the same options available to the court: permanent custody under article 6 (see, Family Ct Act § 1017); [*6]placement of the child with the nonparent under Family Court Act § 1055; and several other options under Family Court Act § 1051 which the court deemed appropriate and in the best interest of the subject child.
Since the article 6 nonparent petitioner has an absolute right to participate in the trial on his petition, and absent the consent of appearing parents, the nonparent is prohibited from participating in the article 10 dispositional hearing pursuant to Family Court Act § 1035 (f), a process that requires a joint hearing whenever a nonparent files an article 6 custody petition renders Family Court Act § 1035 (f) irrelevant. The nonparent could compel the functional equivalent of intervention by filing an article 6 petition.
It is noteworthy that during an article 10 dispositional hearing, the court still has all the same dispositional options available to it, regardless of whether a nonparent is granted intervenor status. The court may grant a nonparent article 6 custody (Family Ct Act § 1017) or placement (Family Ct Act § 1055) even when the nonparent has neither filed an article 6 petition nor moved to intervene in the article 10 action. In fact, it is common for DSS, a parent and/or a law guardian to advocate for such outcomes. The issue presented in this case effects who may present evidence and who may challenge other parties' evidence. The issue presented does not effect the dispositional alternatives available to the court.
The challenge to this court is to follow the direction of Donna KK., Tristram K. and Family Court Act § 1035 (f). Donna KK. does not specifically address Family Court Act § 1035 (f). Tristram K. does not specifically address the interaction of articles 10 and 6 filings.
In an effort to comply with the statutory language of Family Court Act § 1035 (f) and the spirit of the Appellate Division's direction in Felicity II. and Donna KK., the court will proceed as follows. When an article 10 filing is followed by a nonparent article 6 filing, and the subject child is temporarily placed under article 10, the court will first conduct an article 10 fact-finding hearing. If there is a finding of neglect or abuse against a respondent, the court will then conduct an article 10 dispositional hearing simultaneously with an article 10-A permanency hearing.[FN3]

If the article 6 nonparent petitioner moves to participate as an intervener in the article 10 proceeding and that application is granted, the nonparent shall be entitled to fully participate in the dispositional and permanency hearings. If the article 6 nonparent petitioner does not move to intervene in the article 10 proceeding, or for any reason should that application be denied, the article 6 nonparent petitioner shall not be permitted to participate as a party in the combined article 10 dispositional and article 10-A permanency hearing. If as a result of this combined hearing, the subject child is placed pursuant to Family Court Act § 1055 and the permanency goal is established as reunification with the parent, the nonparent's article 6 petition will be dismissed without a hearing.[FN4]

If during the combined hearing, the child is not [*7]placed pursuant to section 1055, or the permanency hearing goal is established to be anything other than reunification with a parent, the court will then conduct a trial on the nonparent's article 6 filing.
In the case at bar, the court will first conduct the fact-finding hearing on the article 10 petition at a date to be scheduled by separate order. If there is a finding of neglect against either or both respondents, the court will conduct a simultaneous dispositional hearing under article 10 and a permanency hearing under article 10-A. If the permanency hearing results in an order continuing the child's article 10 placement and establishes the permanency goal of reunification with the parent, Ms. Bailey's article 6 petition shall then be dismissed without a hearing. If the placement does not continue or the permanency goal at the permanency hearing is established to be anything other than reunification with the parent, the court will then conduct a trial on Ms. Bailey's article 6 petition.

Footnotes

Footnote 1: This court notes that the Donna KK. decision expressly stated that it was "an abuse of discretion" to hear and decide the custody application before resolving the issue of neglect (at 168). Thus, for it to be an abuse of discretion, the trial court must have some discretion regarding the ordering of the proceedings. The Court in Donna KK., however, did not identify any specific facts of the case which made it an abuse of discretion. Therefore, Donna KK. does not give the trial courts any guidance as to when, if ever, it would not be an abuse of discretion to conduct the custody trial on a nonparent's article 6 custody petition prior to the article 10 fact-finding hearing.

Footnote 2: This issue only applies when the nonparent petitioner is the child's adult sibling, grandparent, aunt or uncle. The vast majority of nonparent article 6 petitioners are such relatives.

Footnote 3: As the same rules of evidence apply to both dispositional hearings and permanency hearings, conducting both hearings at the same time does not create the same type of evidentiary problems a joint hearing on an article 6 custody petition and an article 10 dispositional hearing creates.

Footnote 4: Under this fact pattern, dismissal without a hearing would appear to be analogous to the dismissal required by Felicity II. in the case of a postdispositional article 6 filing. The court notes that it would be a remarkably rare case for a nonparent to have sufficient evidence to convince the court to award the nonparent permanent custody of the child but that neither the Department of Social Services, the parents nor the law guardian advocates for such a result.