[58 NYS3d 701]

In the Matter of Dawn N., Appellant, v Schenectady County Department of Social Services et al., Respondents.

Third Department, July 6, 2017

*Michelle I. Rosien*, Philmont, for appellant.

*Christopher H. Gardner, County Attorney*, Schenectady (*Frank S. Salamone* of counsel), for Schenectady County Department of Social Services, respondent.

*Sandra M. Colatosti*, Albany, for Jessica N., respondent.

*Mark J. Gaylord*, Schenectady, Attorney for the Child.

## OPINION OF THE COURT

EGAN JR., J.

Appeal from an order of the Family Court of Schenectady County (Burke, J.), entered November 9, 2015, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.

Petitioner (hereinafter the grandmother) is the maternal grandmother of the subject child (born in 2010) and a resident of North Carolina. According to the grandmother, she has long been the child's primary caregiver—except for brief periods of time when the child's mother, respondent Jessica N. (hereinafter the mother), would abscond with him. At one point, the mother's travels brought her and the child to New York and, in May 2014, respondent Schenectady County Department of Social Services (hereinafter DSS) effectuated an emergency removal of the child and commenced a neglect proceeding against the mother—alleging, among other things, that the mother had taken pornographic pictures of the child and sent them to a man she met online. Following the child's removal, he was placed in the custody of DSS pending further proceedings. Shortly thereafter, the grandmother commenced this Family Ct Act article 6 proceeding against DSS and the mother seek-

ing custody of the child. The mother subsequently was indicted on, and pleaded guilty to, federal charges in connection with the pornographic images of the child and was sentenced to a term of imprisonment.

In response to the grandmother's custody petition, DSS apparently asked that its North Carolina counterpart perform a home study to determine whether, under the Interstate Compact on the Placement of Children (*see* Social Services Law § 374-a [hereinafter ICPC]), the grandmother was a suitable resource for the child. After completion of the home study in January 2015, the North Carolina authorities advised DSS that it did not recommend placement of the subject child with the grandmother and her spouse—primarily citing the fact that the grandmother and her husband already had custody of, and were raising, three other grandchildren (born in 1995, 1998 and 2000).

Family Court thereafter conducted a fact-finding hearing relative to the grandmother's custody petition.[1] Although the mother initially had opposed the grandmother's bid for custody, the mother appeared via telephone at the start of the hearing and voiced her support for the grandmother's petition—prompting Family Court to dispense with an extraordinary circumstances inquiry. At the conclusion of that hearing, Family Court dismissed the grandmother's petition, finding that it was not in the child's best interests to award custody to the grandmother. This appeal by the grandmother ensued.

We affirm, albeit for reasons other than those expressed by Family Court. Although Family Court acknowledged in its written decision that North Carolina had not recommended placement of the child with the grandmother, the court did not address whether, as a threshold matter, the ICPC applies where, as here, a relative is seeking custody of the child pursuant to a petition brought under Family Ct Act article 6 or, more to the

---

1. A hearing on the Family Ct Act article 10 neglect petition initially was deferred pending resolution of the mother's then-pending criminal charges in federal court. During a prehearing conference in March 2015, Family Court learned that the mother had pleaded guilty to certain charges in federal court, and reference was made to the possibility of "mak[ing] a motion" in the context of the neglect proceeding—presumably based upon the mother's admissions in the criminal matter. Ultimately, however, neither the record on appeal nor Family Court's written decision reflects the disposition of the Family Ct Act article 10 proceeding. The record does, however, reflect that, by the time that the custody hearing commenced in April 2015, Family Court was aware that North Carolina had not recommended placement of the subject child with the grandmother.

point, whether custody of the subject child could be awarded to the grandmother in the absence of approval from North Carolina authorities. As we are persuaded that the ICPC applies to this proceeding, and in light of the statutory prohibition against placing a child in another jurisdiction if that jurisdiction determines that such placement would not be in the child's best interests (*see* Social Services Law § 374-a [1] [art III] [d]), Family Court properly dismissed the grandmother's petition for custody.

The ICPC provides, in relevant part, that

> "[n]o sending agency shall send, bring, or cause *to* be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein" (Social Services Law § 374-a [1] [art III] [a]).

To that end, the sending agency must notify the receiving state of its "intention to send, bring, or place the child in the receiving state" and provide certain specified information in conjunction therewith (Social Services Law § 374-a [1] [art III] [b] [1]-[4]), and the statute expressly provides that

> "[t]he child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child" (Social Services Law § 374-a [1] [art III] [d]).

---

**2.** "Sending agency" is defined, in relevant part, as "a party state, officer or employee thereof . . . or other entity which sends, brings, or causes to be sent or brought any child to another party state" (Social Services Law § 374-a [1] [art II] [b]). Similarly, a "receiving state" is defined as "the state to which a child is sent, brought, or caused to be sent or brought, whether by public authorities or private persons or agencies, and whether for placement with state or local public authorities or for placement with private agencies or persons" (Social Services Law § 374-a [1] [art II] [c]). "Placement," insofar as is relevant here, "means the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution" (Social Services Law § 374-a [1] [art II] [d]). Finally, there does not appear to be any dispute that both New York and North Carolina are party states for purposes of the ICPC.

"[T]he [ICPC] was designed to prevent [s]tates from unilaterally dumping their foster care responsibilities on other jurisdictions" and, to that end, "limit[s] the interstate shifting of the economic burden of child care without the prior cooperative agreement between the sending and the receiving [s]tates" (*Matter of Jarrett*, 230 AD2d 513, 517 [1997] [internal quotation marks and citation omitted], *appeal dismissed* 90 NY2d 935 [1997], *lv denied* 91 NY2d 804 [1997], *cert denied sub nom. Johnson v Doe*, 524 US 918 [1998]; *see Matter of Melinda D.*, 31 AD3d 24, 30-31 [2006]).[3]

Here, DSS argues that the pending Family Ct Act article 10 proceeding against the child's mother mandated that DSS, as the child's custodian, comply with the ICPC in the first instance; therefore, the argument continues, absent approval from the appropriate authorities in North Carolina, Family Court was statutorily barred from placing the child with the grandmother in that state. The grandmother, on the other hand, contends the ICPC does not apply at all because custody of the subject child is being sought in the context of a Family Ct Act article 6 proceeding (rather than in conjunction with the related Family Ct Act article 10 neglect proceeding against the mother). Specifically, the grandmother argues that the statute—on its face—is limited to foster care situations or other similar instances in which the receiving state would bear some responsibility for providing aid or services to the subject child. Asserting that she is fully prepared to assume financial responsibility for the child, the grandmother contends that the statutory goals/concerns are not implicated and, therefore, notwithstanding the fact that North Carolina did not recommend the requested placement, the ICPC should not bar placement of the child with her.

The case law interpreting the ICPC is limited and is complicated by both the interplay between related and often (as is the case here) contemporaneous proceedings brought under Family Ct Act articles 6 and 10 (*see* Family Ct Act §§ 1017, 1055-b) and the overarching desire to effectuate an appropriate placement for a child—particularly in those situations where the relevant statutory scheme may be more of an

---

**3.** Although the ICPC does not apply to "[t]he sending or bringing of a child into a receiving state by his [or her] parent, step-parent, grandparent, adult brother or sister, adult uncle or aunt, or his [or her] guardian and leaving the child with any such relative or non-agency guardian in the receiving state" (Social Services Law § 374-a [1] [art VIII] [a]), this exception is of no aid to the grandmother here, as it is clear that DSS had custody of the subject child in the first instance.

impediment than an aid in achieving a placement that is consistent with the child's best interests. Here, although there is no question that the grandmother's efforts to seek custody of the child were well-intentioned, the fact remains that, at the time that the grandmother's custody petition was filed, DSS had custody of the child in the context of the then-pending Family Ct Act article 10 proceeding (*see generally Matter of Shaida W.*, 85 NY2d 453, 460 [1995]). To that end, "[w]here the custody of a child who is under the supervision of [DSS] is transferred to the custody of a parent or relative in another state, the provisions of the ICPC apply" (*Matter of Alexus M. v Jenelle F.*, 91 AD3d 648, 650-651 [2012])—even where, as here, there is a pending Family Ct Act article 6 petition for custody (*see Matter of Faison v Capozello*, 50 AD3d 797, 797-798 [2008]; *but see Matter of Louis N. [Dawn O.]*, 98 AD3d 918, 919 [2012]; *Matter of Marcy RR.*, 2 AD3d 1199, 1200-1201 [2003]). Indeed, the matter before us is virtually indistinguishable from *Faison*, wherein the child's father, a resident of New Jersey, commenced two Family Ct Act article 6 proceedings in Suffolk County seeking to obtain custody of his infant son, who had been placed in the custody of the local social services department due to neglect. In affirming the dismissal of the father's custody petitions, the Second Department held that "[p]lacement of the child with the father in New Jersey must proceed in compliance with the [ICPC]" (*Matter of Faison v Capozello*, 50 AD3d at 797). Inasmuch as New Jersey authorities had concluded "that the father would not provide a suitable environment for his infant son and that placement with the father would not be in the child's best interest . . . , the placement was not permitted under the ICPC" (*id.* at 797-798; *see Matter of Alexus M. v Jenelle F.*, 91 AD3d at 650-651).

To the extent that the grandmother relies upon this Court's prior decision in *Marcy RR.* for the proposition that Family Court may award custody to an out-of-state relative without complying with the ICPC—provided the court does so in the context of a Family Ct Act article 6 proceeding instead of the related Family Court Act article 10 proceeding—we disagree. The primary and stated goal of the ICPC is to ensure that "[e]ach child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care" (Social Services Law § 374-a [1] [art I] [a]; *accord Matter of Faison v Capozello*, 50 AD3d at 797; *Matter of Ryan R.*,

29 AD3d 806, 807 [2006]). The grandmother does not dispute—and even this Court's decision in *Marcy RR.* recognizes—that "[a] Family Ct Act article 10 placement with an out-of-state relative . . . requires adherence to the [ICPC]" (*Matter of Marcy RR.*, 2 AD3d at 1201). To our analysis, permitting a court to award custody of a child (who is in the care and custody of a social services agency) to an out-of-state relative in the context of a Family Ct Act article 6 proceeding (while there is a related Family Ct Act article 10 proceeding in play) not only subverts the goals of the ICPC, but allows a court to effectively circumvent the procedures and requirements set forth therein—a result that is contrary to the expressed purpose of the statute. Stated another way, awarding custody to the grandmother here would amount to an end run around the ICPC—a result that is in no way altered or obviated by the grandmother's stated willingness to assume financial responsibility for the child, as the potential economic impact upon North Carolina is but one of the concerns that the ICPC is set up to address. Accordingly, we agree with DSS that the provisions of the ICPC apply here and, absent approval from authorities in North Carolina, Family Court could not grant the grandmother's petition for custody. As Family Court should have dismissed the grandmother's petition upon that ground, we need not consider the merits of the court's best interests analysis or the parties' arguments relative thereto.

GARRY, J.P., LYNCH, MULVEY and AARONS, JJ., concur.

Ordered that the order is affirmed, without costs.