Matter of Walter DD. (Walter TT.) (2017 NY Slip Op 05640)





Matter of Walter DD. (Walter TT.)


2017 NY Slip Op 05640


Decided on July 13, 2017


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 13, 2017

522864

[*1]In the Matter of WALTER DD. and Another, Alleged to be Permanently Neglected Children. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WALTER TT., Appellant.

Calendar Date: June 7, 2017

Before: Peters, P.J., Rose, Mulvey, Aarons and Pritzker, JJ.


Norbert A. Higgins, Binghamton, for appellant.
Donald S. Thomson, Chemung County Department of Social Services, Elmira, for respondent.
Christopher A. Pogson, Binghamton, attorney for the children.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Chemung County (Hayden, J.), entered March 21, 2016, which granted petitioner's application, in a proceeding pursuant to Social Services Law
§ 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
Respondent is the father of two children, a son (born in 2006) and a daughter (born in 2008). In July 2012, while respondent was incarcerated, the children were removed from their mother's care, adjudicated to be neglected and placed in foster care, where they have remained since. When respondent was released from jail, he filed a modification petition seeking unsupervised visitation, which was dismissed, and the dismissal of said petition was affirmed on appeal (Matter of Walter TT. v Chemung County Dept. of Social Servs., 132 AD3d 1170, 1171 [2015]). In May 2014, respondent stabbed his paramour and was thereafter sentenced to six years in prison, with a conditional release date of June 29, 2019. Petitioner commenced this permanent neglect proceeding against respondent in September 2014, seeking to terminate his [*2]parental rights and free the children for adoption. After a fact-finding and dispositional hearing, Family Court adjudicated the children to be permanently neglected and terminated respondent's parental rights. Respondent appeals, and we affirm.
As applicable herein, "Social Services Law § 384-b (7) (a) defines a permanently neglected child as [one] who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1084 [2015]). Thus, to terminate parental rights on the ground of permanent neglect, a petitioner must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the children (see Social Services Law § 384—b [7] [a]). "To satisfy this duty, [the] petitioner must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child[ren's] progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1218 [2014] [citations omitted]; see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012]; Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1178 [2017]). Respondent's incarceration does not relieve petitioner of its duty to engage in diligent efforts (see Matter of James J. [James K.], 97 AD3d 936, 937 [2012]). Within that context, "recognizing that incarceration creates some impediments, both to the agency and to the parent, . . . an agency may fulfill its duty to make diligent efforts to encourage and strengthen the parental relationship of an incarcerated parent by, for example, apprising the incarcerated parent of the child[ren's] well-being, developing an appropriate service plan, investigating possible placement of the child[ren] with relatives suggested by the parent, responding to the parent's inquiries and facilitating telephone contact between the parent and child[ren]" (id. at 937).
Petitioner's caseworker testified that, while respondent was incarcerated, she sent him letters giving updates about the children, asking respondent what services he was involved in, what she could do to help, and what his plan was for getting the children out of foster care. Further, while respondent was not incarcerated, petitioner facilitated visitation between respondent and the children, as well as discussed with respondent his plan for getting the children out of foster care. We find that this, as well as the December 2015 permanency hearing report prepared by petitioner, established, by clear and convincing evidence, that petitioner engaged in diligent efforts to encourage and strengthen respondent's relationship with the children (see Matter of Carter A. [Courtney QQ.], 121 AD3d at 1218).
Having established diligent efforts, petitioner must now demonstrate "by clear and convincing evidence that, although able to do so, respondent failed to plan for the future of the children for the requisite time period" (Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1179; see Social Services Law § 384-b [7] [a]). "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child[ren's] initial removal from the home" (Matter of Marcus BB. [Donna AA.], 130 AD3d 1211, 1212 [2015] [citations omitted]). We find that petitioner demonstrated that respondent failed to so plan (see Matter of Landon U. [Amanda U.], 132 AD3d at 1084). Specifically, the testimony of the caseworker established that the children have languished in foster care for approximately five years. Respondent's plan is to have them remain in foster care at least until he is released from prison, which would not be until June 2019, at the earliest. Even then, respondent has offered no specific strategy to care for his children (see Matter of Gregory B., 74 NY2d 77, 89 [1989]). Respondent's intentions, however well-meaning, do not constitute a viable and realistic plan as contemplated under the Social Services Law (see Matter of Hailey ZZ [Ricky ZZ.], 19 NY3d at 431 [2012]).
We also find that terminating respondent's parental rights and freeing the children for adoption was in the children's best interests. Initially, the record reflects that the children have spent a significant time in foster care and have established strong relationships with their current foster parents, who are adoptive resources for the children. Further, the record in respondent's recent Family Court cases, of which Family Court took judicial notice, reinforced the best interests analysis by underscoring respondent's mental health issues, limited visitation, improper discipline and inadequate supervision. Visitations with respondent were characterized as chaotic, and the legion of issues he presents, including his aberrant behavior, should not place the children's future in a state of suspended animation. Finally, respondent's testimony did not alter the court's sound decision to free the children for adoption and give them a legitimate chance to enjoy permanent loving homes.
Peters, P.J., Rose, Mulvey and Aarons, JJ., concur.
ORDERED that the order is affirmed, without costs.