Matter of Brielle UU. (Brandon UU.) (2018 NY Slip Op 08586)





Matter of Brielle UU. (Brandon UU.)


2018 NY Slip Op 08586


Decided on December 13, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 13, 2018

524630

[*1]In the Matter of BRIELLE UU., Alleged to be a Permanently Neglected Child. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; BRANDON UU., Appellant. (Proceeding No. 1.)
In the Matter of BRIELLE UU., Alleged to be a Permanently Neglected Child. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; REGINA VV., Appellant. (Proceeding No. 2.)

Calendar Date: October 16, 2018

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Rumsey, JJ.


Lisa K. Miller, McGraw, for Brandon UU., appellant.
Ciano J. Lama, Ithaca, for Regina VV., appellant.
Zela E. Brotherton, Cortland County Department of Social Services, Cortland, for respondent.
Charles E. Lupia, Syracuse, attorney for the child.



MEMORANDUM AND ORDER
Clark, J.
Appeals from four orders of the Family Court of Cortland County (Campbell, J.), entered February 24, 2017 and March 23, 2017, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondents' parental rights.
Respondent Brandon UU. (hereinafter the father) and respondent Regina VV. (hereinafter the mother) are the parents of a daughter (born in 2014). In June 2014, following an episode of domestic violence that reportedly occurred between the mother and the father in the presence of the child and her half sibling, petitioner commenced neglect proceedings against both the mother and the father. In December 2014, upon the mother's consent, Family Court entered an order of fact-finding and disposition that included a finding of neglect against the mother, placed the mother under a period of supervision by petitioner and suspended judgment. That same month, the father consented to an order that included a finding of neglect without factual admissions and directed his placement under petitioner's supervision for a period of one year. Family Court also issued an order of protection against the father, prohibiting him from having contact with the mother and the child, but permitting him supervised visits with the child.
In January 2015, while the father was incarcerated in a local jail, petitioner temporarily removed the child from the mother's care and filed a petition and amended petition against the mother alleging that she had violated certain conditions of the December 2014 suspended judgment and seeking the child's removal from the mother's care. Following a hearing, Family Court continued the child's temporary placement in the care and custody of petitioner. Thereafter, in April 2015, upon the mother's consent, Family Court found that the mother violated certain conditions of the suspended judgment, revoked the suspended judgment, adjudicated the mother to have neglected the child, placed the mother under the supervision of petitioner for a period of one year and directed that the child remain in the care and custody of petitioner pending further court order.
In July 2016, petitioner commenced the instant proceedings against the mother and the father seeking adjudications of permanent neglect and termination of respondents' parental rights to the child. Following a fact-finding hearing and a dispositional hearing, Family Court adjudicated the child to have been permanently neglected by both the mother and the father, terminated respondents' parental rights to the child and transferred guardianship and custody of the child to petitioner. Respondents appeal,[FN1] and we affirm.
The father challenges Family Court's finding that he permanently neglected the child. "A permanently neglected child is one 'who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship'" (Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1077-1078 [2018], quoting Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1084 [2015]; see Social Services Law § 384-b [7] [a]). "Where, as here, petitioner seeks to terminate parental rights on the basis of permanent neglect, it 'must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the child[]'" (Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1472 [2017], quoting Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1178 [2017]; see Social Services Law § 384-b [3] [g] [i]). To satisfy its duty of diligent efforts, petitioner must "make practical and reasonable efforts to ameliorate the problems [*2]preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Carter A. [Courtney QQ.], 121 AD3d 1217, 1218 [2014]; accord Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1002-1003 [2017]). Where the parent is incarcerated, "an agency may fulfill its duty . . . by, for example, apprising the incarcerated parent of the child's well-being, developing an appropriate service plan, investigating possible placement of the child with relatives suggested by the parent, responding to the parent's inquiries and facilitating telephone contact between the parent and child" (Matter of James J. [James K], 97 AD3d 936, 937 [2012]; see Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1070 [2018], lvs denied 32 NY3d 908 [2018]).
Contrary to the father's contention, petitioner satisfied its burden of establishing that it exercised diligent efforts to encourage and strengthen his relationship with the child. The evidence at the fact-finding hearing demonstrated that the father was incarcerated in a local jail when the child was removed from the mother's care in January 2015 and that, when he was released from jail later that month, he could not be a resource for the child given the order of protection prohibiting him from having unsupervised contact with the child. However, the father did suggest his brother and sister-in-law as a potential resource for the child and, following a successful home study, the child was placed with them for a period of time [FN2]. The record established that, pursuant to Family Court's December 2014 order, the father was required to, among other things, maintain safe and stable housing for six months, maintain temporary assistance benefits, undergo both a mental health evaluation and a substance abuse evaluation and follow the recommendations flowing from those evaluations. Testimony from petitioner's caseworkers demonstrated that petitioner provided the father with various services to assist with these court mandates, including referrals for a drug and alcohol evaluation, a mental health evaluation, a parenting class and a family educator, who supervised visits between the father and the child and provided the father with weekly in-home education. The caseworkers' testimony also established that petitioner provided housing assistance to the father by housing him in various hotels from January 2015 through April 2015, when he secured a somewhat more stable living situation in a rooming house, helping the father with rent for the rooming house and providing him with landlord listings. Petitioner's evidence also demonstrated that it helped the father secure temporary assistance, including cash benefits, food stamps and Medicaid.
The evidence further established that the father was incarcerated once again in August 2015. Petitioner's caseworker testified that, following the father's arrest, she visited the father in the local jail and in state prison on several occasions and otherwise maintained contact with him by sending letter updates. Although the father regrettably did not see the child from his incarceration in August 2015 through July 2016, when the permanent neglect petition was filed against him, the record reveals that such lapse was due to complications arising out of the father's incarceration, the stay-away order of protection against the father in favor of the child, the child's placement in foster care and the distance between the child's foster home and the prison at which the father was housed (see generally Matter of Charles K. [Charles L.], 100 AD3d 1308, 1309 [2012]). As the record reveals petitioner's consistent efforts to ameliorate the conditions that led to the child's removal and to strengthen the father's relationship with the child, Family Court did not err in determining that petitioner established, by clear and convincing evidence, that it made diligent efforts to encourage and strengthen the parental relationship (see Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897-898 [2017], lv denied 30 NY3d 905 [2017]; Matter of Joannis P. [Joseph Q.], 110 AD3d 1188, 1190 [2013], lv denied 22 NY3d 857 [2013]; Matter of Charles K. [Charles L.], 100 AD3d at 1308-1309; Matter of James J. [James K.], 97 AD3d at 937-938).
We also find that petitioner satisfied its burden of proving by clear and convincing evidence that the father failed to substantially plan for the child's future. "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal" (Matter of Marcus BB. [Donna AA.], 130 AD3d 1211, 1212 [2015] [citations [*3]omitted]; accord Matter of Paige J. [Jeffrey K.], 155 AD3d at 1474). The parent's plan "must be realistic and feasible" and his or her good faith effort, alone, is not enough (Matter of Star Leslie W., 63 NY2d 136, 143 [1984]; see Matter of Paige J. [Jeffrey K.], 155 AD3d at 1474). Testimony from petitioner's caseworker, as well as the family educator who supervised the father's visits with the child, demonstrated that — to his credit — the father regularly visited with the child from January 2015 through August 2015, that those visits went well and that the father had completed a parenting class. However, the evidence at the fact-finding hearing also established that, in the roughly 18 months during which the child was in petitioner's care, the father had started, but failed to successfully complete, mental health and alcohol and substance abuse treatment programs. The father's treatment providers testified that he was discharged from the programs because he either stopped attending required appointments or was incarcerated. In addition, testimony from the father's caseworker demonstrated that, after he failed to appear at the required recertification appointment, the father lost his temporary financial assistance in July 2015.
The record also established that the father failed to lead a law-abiding life, as required by Family Court's December 2014 order. The family educator testified to an instance when the father disclosed having been on a four-day methamphetamine binge, and testimony from the father's caseworker and substance abuse counselor revealed that the father had similarly disclosed using methamphetamine at various times between January 2015 and August 2015. Further, the evidence — including testimony from the responding police officer — demonstrated that the father's August 2015 arrest arose out of the mother's presence in the father's home in violation of the order of protection. The responding police officer testified that the mother had bruises on her arms and face and reported being physically assaulted by the father. The father was ultimately convicted of criminal contempt in the first degree and violating the terms of his probation and, at the time of the fact-finding hearing in January 2017, was serving a prison sentence of 1½ to 3 years. The father testified that his plan was for the child to remain in foster care until he was released from prison in 2017 or 2018 and could make appropriate arrangements. Inasmuch as the child's indefinite placement in foster care does not constitute a viable plan (see Matter of Timothy GG. [Meriah GG.], 163 AD3d at 1072; Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1088 [2017], lv denied 30 NY3d 908 [2018]), and as the record demonstrates that the father "took no effective steps to correct the conditions leading to removal or advance a realistic, feasible plan" (Matter of Nathaniel T., 67 NY2d 838, 842 [1986]), Family Court properly found that the father failed to plan for the child's future (see Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1139-1140 [2012], lv denied 19 NY3d 801 [2012]; Matter of Trestin T. [Shawn U.], 82 AD3d 1535, 1536-1537 [2011], lv denied 17 NY3d 704 [2011]). Accordingly, notwithstanding petitioner's diligent efforts, there is a sound and substantial basis in the record to support Family Court's finding that the father permanently neglected the child (see Matter of Dakota Y. [Robert Y.], 97 AD3d 858, 860-861 [2012], lv denied 20 NY3d 852 [2012]; Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d 1265, 1266 [2011], affd 19 NY3d 422 [2012]).
As to disposition, both the mother and the father argue that Family Court should have granted them a suspended judgment instead of terminating their parental rights to the child. Following an adjudication of permanent neglect, the sole consideration is the best interests of the child, and there is no presumption that any particular disposition serves those interests (see Matter of Jessica U. [Stephanie U.], 152 AD3d at 1005; Matter of Landon U. [Amanda U.], 132 AD3d at 1085). The evidence established that, at the time of the dispositional hearing in late January 2017, the child had been in foster care for roughly two years and, for the preceding 10 months, had been in the care of the father's first cousin and her husband, who had become certified foster parents and wished to adopt the child. By all accounts, the child was well cared for in foster care and had developed a strong bond with her foster parents.
Turning to the mother, the evidence established that, at the time of the hearing, the mother had recently completed an inpatient treatment program for her alcohol and cannabis dependencies and had established a medication regimen to treat her mental health disorders. However, the testimony revealed that she had only been sober at that point for a total of 55 days, had not yet reached a status of sustained remission and was at a high statistical likelihood of [*4]relapse during the first year following rehabilitation. In addition, the evidence demonstrated that the mother was living in transitional housing, was unemployed, had only recently obtained temporary financial assistance and had not completed the required aid to victims of violence program. Under these circumstances, and considering the length of time that the child had been in foster care, a sound and substantial basis exists in the record to support Family Court's finding that termination of the mother's parental rights was in the child's best interests (see Matter of Joannis P. [Joseph Q.], 110 AD3d at 1191-1992; Matter of Angelina BB. [Miguel BB.], 90 AD3d 1196, 1198 [2011]; Matter of Nevaeh SS. [Valerie L.], 68 AD3d 1188, 1189-1190 [2009]).
We reach a similar conclusion as to the father. The father remained incarcerated at the time of the dispositional hearing, with a conditional release date of April 5, 2017 and a maximum release date of April 5, 2018. Although the father testified that he completed an alcohol and substance abuse treatment program while incarcerated, the father's reunification with the child following his release from prison hinged on his ability to implement his plans to apply for temporary financial assistance, secure suitable housing for the child, continue treatment for his alcohol and substance abuse and mental health issues, avoid triggers from his old lifestyle, obtain his general equivalency diploma and apply for full- or part-time employment. Given all of the circumstances, including the young child's need for permanency after two years in foster care (see generally Social Services Law § 384-b [1]), we find no basis to disturb Family Court's determination that termination of the father's parental rights is in the child's best interests (see Matter of Johanna M. [John L.], 103 AD3d 949, 951 [2013], lv denied 21 NY3d 855 [2013]; Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d at 1266-1267; Matter of Trestin T. [Shawn U.], 82 AD3d at 1537). Although the father alleges new developments in his reply brief — filed nearly 15 months after the termination of his parental rights and nine months after the filing of his appellate brief — and requests a new dispositional hearing to consider the best interests of the child in light of these circumstances (see generally Matter of Michael B., 80 NY2d 299, 318 [1992]), we find that termination of the father's parental rights, rather than a suspended judgment, remains in the child's best interests (cf. Matter of Cyle F. [Alexander F.], 155 AD3d 1626, 1628 [2017], lv denied 30 NY3d 911 [2018]; compare Matter of Malik S. [Jana M.], 101 AD3d 1776, 1777-1778 [2012]).
To the extent that we have not addressed any of respondents' remaining arguments, they have been examined and found to be without merit.
Garry, P.J., Egan Jr., Mulvey and Rumsey, JJ., concur.
ORDERED that the appeals from the orders entered February 24, 2017 are dismissed, without costs.
ORDERED that the orders entered March 23, 2017 are affirmed, without costs.



Footnotes

Footnote 1: The appeals by the mother and the father from the February 24, 2017 fact-finding orders must be dismissed because no appeal lies as of right from a nondispositional order in a permanent neglect proceeding (see Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1282 n 1 [2012]; Matter of Alyssa L. [Deborah K.], 93 AD3d 1083, 1084-1085 [2012]). Nevertheless, the fact-finding orders are brought up for review by the mother's and the father's respective appeals from the March 23, 2017 dispositional orders (see Matter of Aniya L. [Samantha L.], 124 AD3d 1001, 1002 n [2015], lv denied 25 NY3d 904 [2015]; Matter of Arianna I. [Roger I.], 100 AD3d at 1282 n 1).

Footnote 2: The child was subsequently placed with the father's first cousin and her husband.