Matter of Jace N. (Jessica N.) (2019 NY Slip Op 00332)





Matter of Jace N. (Jessica N.)


2019 NY Slip Op 00332


Decided on January 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 17, 2019

525656

[*1]In the Matter of JACE N., Alleged to be a Permanently Neglected Child. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JESSICA N., Appellant.

Calendar Date: December 12, 2018

Before: Lynch, J.P., Clark, Mulvey, Devine and Rumsey, JJ.


Sandra M. Colatosti, Albany, for appellant.
Sarah M. Hannah, Schenectady County Department of Social Services, Schenectady, for respondent.
Karen R. Crandall, Glenville, attorney for the child.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from an order of the Family Court of Schenectady County (Burke, J.), entered August 22, 2017, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent is the mother of the subject child (born in 2010). In January 2015, respondent pleaded guilty in federal court to transporting child pornography after she took and shared photographs of the child with a former boyfriend during a period beginning in late 2013 through April 2014. Prior thereto, in May 2014, the child had been removed from respondent's care pursuant to Family Ct Act § 1024. Family Court subsequently adjudicated the child to be neglected and placed him in foster care. Petitioner filed a permanent neglect petition in June 2016. Family Court granted the petition and terminated respondent's parental rights. Respondent now appeals.[FN1]
A permanently neglected child is one "who is in the care of an authorized agency and whose parent has failed, for a period of either at least one year or fifteen out of the most recent twenty-two months following the date such child came into [such] care . . . to maintain contact [*2]with or plan for the future of the child, although physically and financially able to do so" (Social Services Law § 384-b [7] [a]; see Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897 [2017], lv denied 30 NY3d 905 [2017]). "Where, as here, petitioner seeks to terminate parental rights on the basis of permanent neglect, it must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the child" (Matter of Brielle UU. [Brandon UU.], ___ AD3d ___, ___, 2018 NY Slip Op 08586, *1 [2018] [internal quotation marks, brackets and citations omitted]). "A diligent effort is one that is practical and reasonable and designed to ameliorate the problems preventing reunification and strengthen the family relationship" (Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1078 [2018] [internal quotation marks and citations omitted]). When a parent is incarcerated, "an agency may fulfill its duty to make [such] diligent efforts . . . by, for example, apprising the incarcerated parent of the child's well-being, developing an appropriate service plan, investigating possible placement of the child with relatives suggested by the parent, responding to the parent's inquiries and facilitating telephone contact between the parent and child" (Matter of Walter DD. [Walter TT.], 152 AD3d at 897 [internal quotation marks, brackets and citation omitted]; see Matter of Brielle UU. [Brandon UU.], 2018 NY Slip Op 08586 at *2). If the agency establishes that it made a diligent effort, "the issue becomes whether [the parent] substantially planned for the child's future" (Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d at 1078 [internal quotation marks, brackets and citation omitted]).
Petitioner offered testimony by caseworkers John Quinn and Betsey Martineau. These witnesses explained that, immediately prior to arriving in Schenectady County with a paramour that respondent had met on the Internet, respondent and the child had been living in North Carolina with respondent's parents, her sister and her sister's three children. The child came into petitioner's care in May 2014 when Quinn was assigned to investigate an allegation that respondent had taken pornographic photographs of the child and sent them to a former paramour. Initially, Quinn attempted to find respondent housing until July 2014, when respondent was arrested for, among other things, transporting pornography and she was placed in the Rensselaer County jail. Petitioner facilitated visits between the child and respondent until the end of July 2014, when respondent was transferred from local custody to federal custody in North Carolina. Having pleaded guilty to the charge of transporting pornography in January 2015, respondent was subsequently sentenced to 71 months in federal prison in West Virginia followed by five years of postrelease supervision. One condition of the postrelease supervision was that she not have contact with the child without prior authorization from her probation officer.
Martineau testified that she sent respondent letters each month to give her updates about the child's health and progress in school, to share pictures of the child, to give information about respondent's parental rights and to advise respondent to retain counsel. Martineau recalled that respondent had written to the child five times since she was first assigned the case in February 2015. At no time did respondent identify any resources to allow for contact with the child in either North Carolina or West Virginia, and, given the significant distance and the child's age, petitioner was not obligated to facilitate such visits (see Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1087 [2017], lv denied 30 NY3d 908 [2018]; Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1139 [2012], lv denied 19 NY3d 801 [2012]). In our view, Family Court properly determined that petitioner established, by clear and convincing evidence, that it made a diligent effort to encourage and strengthen the relationship between respondent and the child (see Matter of Brielle UU. [Brandon UU.], 2018 NY Slip Op 08586 at *2; Matter of Walter DD. [Walter TT.], 152 AD3d at 897-898; Matter of Jazmyne II. [Frank MM.], 144 AD3d 1459, 1460 [2016], lv denied 29 NY3d 901 [2017]).
With this threshold burden met, petitioner was next required to demonstrate, by clear and convincing evidence, that respondent failed to either maintain contact with the child or to plan for the child's future for the requisite time period (see Social Services Law § 384-b [7] [a]; Matter of Star Leslie W., 63 NY2d 136, 142-143 [1984]; Matter of Joannis P. [Joseph Q.], 110 AD3d 1188, 1190-1191 [2013], lv denied 22 NY3d 857 [2013]; Matter of Arianna BB. [Tracy [*3]DD.], 110 AD3d 1194, 1195-1196 [2013], lvs denied 22 NY3d 858 [2014])[FN2]. We agree with Family Court's determination that petitioner established that respondent failed to plan for the child's future. "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal from the home" (Matter of Walter DD. [Walter TT.], 152 AD3d at 898 [internal quotation marks, brackets and citations omitted]). "The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative" (Social Services Law § 384-b [7] [c]; see Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1070 [2018], lvs denied 32 NY3d 908 [2018]).
Although the maternal grandparents cared for the child during the first four years of his life, we do not agree with respondent's claim that the child should have been returned to their care during respondent's incarceration (see Matter of Dawn N. v Schenectady County Dept. of Social Servs., 152 AD3d 135 [2017], lv denied 30 NY3d 902 [2017]). Like Family Court, we are mindful that respondent testified that she attempted to complete available and appropriate programs and treatment while in custody. Under the circumstances, however, including the conceded possibility that respondent will not be permitted to see the child upon her release from custody, her plan to have the child remain in foster care until her release from prison is neither realistic nor feasible (see Matter of Timothy GG. [Meriah GG.], 163 AD3d at 1070; Matter of Walter DD. [Walter TT.], 152 AD3d at 898). Based on the foregoing, we conclude that there is a sound and substantial basis in the record supporting Family Court's determination that respondent permanently neglected the child (see Matter of Brielle UU. [Brandon UU.], 2018 NY Slip Op 08586 at *3).
As to the disposition, we are not persuaded by respondent's argument that, upon its finding of permanent neglect, Family Court should have issued a suspended judgment. At a dispositional hearing, the focus is the child's best interests (see Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d at 1080). There is no presumption that reunification with a parent is in a child's best interests, and a suspended judgment may be appropriate "if it is in the best interests of the child to allow the parent additional time to improve parenting skills and demonstrate his or her fitness to care for the child" (id. [internal quotation marks, brackets and citations omitted]). At the time of the dispositional hearing, the child had been cared for by his foster family for more than three years, he was happy and thriving and the foster parents wished to adopt him. In our view, Family Court properly determined that it was in the child's best interests to terminate respondent's parental rights and free him for adoption (see Matter of Bayley W. [Patrick K.], 146 AD3d 1097, 1101 [2017], lv denied 29 NY3d 907 [2017]).
Clark, Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Contrary to petitioner's argument, respondent's appeal from the dispositional order brings the fact-finding order up for review (see Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1087 n 3 [2017], lv denied 30 NY3d 908 [2018]).

Footnote 2: Family Court did not base its permanent neglect finding on respondent's efforts to maintain contact with the child during the requisite time period, so we will not assess whether respondent's periodic correspondence during the requisite time period was sufficient.