Matter of Jack V. (Jack U.) (2025 NY Slip Op 06574)

Matter of Jack V. (Jack U.)

2025 NY Slip Op 06574

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-24-1640
[*1]In the Matter of Jack V. and Another, Alleged to be Permanently Neglected Children. Broome County Department of Social Services, Respondent; Jack U., Appellant.

Calendar Date:October 17, 2025

Before:Clark, J.P., Pritzker, Lynch, Powers and Mackey, JJ.

Lisa K. Miller, McGraw, for appellant.
Broome County Department of Social Services, Binghamton (Stacy D. McCabe of counsel), for respondent.
Andrea J. Mooney, Ithaca, attorney for the children.

Clark, J.P.
Appeal from an order of the Family Court of Broome County (Hollie Levine, J.), entered June 4, 2024, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of twin boys (born in 2016), who are the subject of these proceedings. In December 2016, when the children were one month old, they were removed from the home and placed in foster care. The father was incarcerated at that time and the children's mother was struggling with substance abuse. Shortly after the children's removal, petitioner commenced a neglect proceeding against the father and the mother. That proceeding was resolved in June 2017, when Family Court (Pines, J.) made a finding of neglect against the mother [FN1] and granted the father an adjournment in contemplation of dismissal (hereinafter ACD) for a period of one year (see Family Ct Act § 1039). The order granting the father an ACD required him to abide by several conditions, including to engage in services requested by petitioner and to sign releases enabling caseworkers to obtain information from the correctional facility in which he was incarcerated. At the end of the one-year adjournment period, which was to expire in May 2018, the petition against the father would be deemed dismissed by operation of law if no petition to restore the matter was filed.
In June 2023, after the neglect proceeding had been dismissed against the father following the expiration of the ACD period, petitioner commenced this permanent neglect proceeding seeking to terminate the father's parental rights.[FN2] Following fact-finding and dispositional hearings, Family Court (Levine, J.) granted the petition, adjudged the children to be permanently neglected by the father, and terminated his parental rights. The father appeals.[FN3]
Initially, the father challenges the permanent neglect finding on the ground that there was no underlying neglect adjudication made against him during the December 2016 proceeding and that, because there was no underlying order of disposition, he was not required to abide by any conditions or requirements. Such argument is unavailing, as Social Services Law § 384-b (7) (a) — the statutory provision defining a permanently neglected child — does not condition a permanent neglect finding on the presence of an underlying neglect adjudication made pursuant to Family Ct Act article 10 or on compliance with a dispositional order entered under that article (see Family Ct Act § 614 [1]).
Turning to the merits of the permanent neglect finding, the father argues that petitioner did not make diligent efforts to strengthen the parental relationship. We disagree. A permanently neglected child means, in relevant part, "a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of . . . at least one year or [15[*2]] out of the most recent [22] months following the date such child came into the care of an authorized agency . . . [to] plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]; accord Matter of K.Y.Z. [W.Z.], ___ NY3d ___, ___, 2025 NY Slip Op 05781, *5 [2025]). "Thus, in a permanent neglect proceeding, the petitioner bears the burden of proving by clear and convincing evidence, first, that it made such diligent efforts, and, second, that the respondent failed to plan for the child's future" (Matter of Gina P. [Shannon O.], ___ AD3d ___, ___, 2025 NY Slip Op 05726, *1 [3d Dept 2025] [internal quotation marks and citations omitted]; see Social Services Law § 384-b [7] [a]; Matter of K.Y.Z. [W.Z.], ___ NY3d at ___, 2025 NY Slip Op 05781, *5).
Diligent efforts means "ma[king] practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the children's progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897 [3d Dept 2017], lv denied 30 NY3d 905 [2017] [internal quotation marks, brackets and citations omitted]; see Matter of K.Y.Z. [W.Z.], ___ NY3d at ___, 2025 NY Slip Op 05781, *6; Matter of Gina P. [Shannon O.], ___ AD3d at ___, 2025 NY Slip Op 05726, *1). Such efforts entail "developing a plan that is realistic and tailored to fit the respondent's individual situation" (Matter of Gina P. [Shannon O.], ___ AD3d at ___, 2025 NY Slip Op 05726, *2 [internal quotation marks and citations omitted]; see Matter of K.Y.Z. [W.Z.], ___ NY3d at ___, 2025 NY Slip Op 05781, *6). Petitioner's obligation to undertake diligent efforts to strengthen the parental relationship extends to incarcerated parents (see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012]; Matter of Walter DD. [Walter TT.], 152 AD3d at 897; Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1285 [3d Dept 2012]). "Within that context, recognizing that incarceration creates some impediments, both to the agency and to the parent, an agency may fulfill its duty to make diligent efforts . . . by, for example, apprising the incarcerated parent of the children's well-being, developing an appropriate service plan, investigating possible placement of the children with relatives suggested by the parent, responding to the parent's inquiries and facilitating telephone contact between the parent and children" (Matter of Walter DD. [Walter TT.], 152 AD3d at 897 [internal quotation marks, ellipsis, brackets and citation omitted]; see Matter of Arianna I. [Roger I.], 100 AD3d at 1285). "In assessing whether petitioner has demonstrated permanent neglect, we accord great weight to the [*3]factual findings and credibility determinations of Family Court, and its findings will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Nikole V. [Norman V.], 224 AD3d 1102, 1103 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 41 NY3d 909 [2024]; see Matter of Carmela D. [Shameeka G.], 232 AD3d 1126, 1129 [3d Dept 2024], lvs denied 43 NY3d 903 [2025], 43 NY3d 903 [2025]).
Here, the record establishes that the father has been incarcerated for several periods since the children's birth, including during the four years preceding the filing of the permanent neglect petition. He remained incarcerated as of the date of the fact-finding hearing in March 2024.[FN4] During the hearing, a caseworker assigned to the father's case in October 2021 explained that the major obstacle to reunification was the father's failure to develop an appropriate plan for the children's future, revealing that his intent was for the children to remain in foster care until the end of his incarceration and to have his girlfriend "look in" on them. The caseworker repeatedly informed the father that this was not a feasible plan and reminded him of the need to find a custodial resource for the children. The caseworker attempted to contact the individuals the father named early in the proceedings, but was unsuccessful in reaching them. The record also demonstrates that petitioner developed a service plan for the father, which included services such as substance abuse counseling, mental health counseling, parenting classes and anger management classes. Notably, the caseworker confirmed that the correctional facility at which the father was incarcerated for the majority of the relevant time frame offered the services petitioner was requiring of him,[FN5] communicated with him about those services, informed him of how he could go about setting them up within the confines of prison, and sent the father releases to sign to enable caseworkers to "contact the prison in regards to services that [he was] involved in." According to the caseworker, the father did not engage in any of the required classes or services during the requisite time frame and provided her with only one properly signed release allowing her to communicate with the father's social worker during a one-month period. The caseworker also gave the father advanced notice of service plan reviews and invited him to participate, including by virtual appearance, testifying that he never did. Moreover, petitioner attempted to facilitate contact with the children, including by sending the father return envelopes to enable him to write the children letters from prison and inquiring of the foster parents when the father raised a concern that they had blocked his phone number. Although in-person visits were not facilitated by petitioner, the father revealed that he had an aunt who could have brought the subject children for in-person visitation and that he never offered the aunt's [*4]information to the caseworker to facilitate as much. Stated succinctly, the record establishes, by clear and convincing evidence, that petitioner made affirmative, repeated and meaningful efforts to strengthen and encourage the parental relationship, and there is no basis to disturb Family Court's finding that the threshold diligent efforts requirement was satisfied (see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d at 429; Matter of Jaxon S. [Jason S.], 170 AD3d 1687, 1688 [4th Dept 2019]; Matter of Walter DD. [Walter TT.], 152 AD3d at 897; Matter of Arianna I. [Roger I.], 100 AD3d at 1285).
The evidence at the hearing also supports Family Court's determination that the father failed to substantially plan for the children's future for the requisite statutory time frame. In that regard, "[o]nce petitioner meets the threshold burden of establishing diligent efforts, it must then demonstrate, through clear and convincing evidence, that [the] respondent [parent] failed to substantially plan for the future of the child for the requisite period of time, which requires the parent to take meaningful steps to correct the conditions that led to the child's removal" (Matter of Desirea F. [Angela H.], 217 AD3d 1064, 1066 [3d Dept 2023] [internal quotation marks, brackets and citation omitted], lv denied 40 NY3d 908 [2023]; see Matter of Daimeon MM. [Laurie MM.], 230 AD3d 1416, 1418 [3d Dept 2024], lv denied 42 NY3d 910 [2025]). "The parent's plan must be realistic and feasible, and his or her good faith effort, alone, is not enough" (Matter of Jase M. [Holly N.], 190 AD3d 1238, 1241 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lvs denied 37 NY3d 901 [2021], 37 NY3d 901 [2021]; accord Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1148 [3d Dept 2022], lv denied 38 NY3d 903 [2022]; see Social Services Law § 384-b [7] [c]). As previously noted, the father's plan for the children was to have them remain in foster care until he got out of prison, with the intent to have his girlfriend [FN6] check in on them during that period. The Court of Appeals has concluded that this is not a feasible plan, as an unnecessarily protracted stay in foster care is not in a child's best interests (see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d at 430; Matter of Michael B., 80 NY2d 299, 310 [1992]; see Matter of Alex C., Jr. [Alex C., Sr.], 114 AD3d 1149, 1150 [4th Dept 2014], lv denied 23 NY3d 901 [2014]; Matter of James J. [James K.], 97 AD3d 936, 938 [3d Dept 2012]). In these circumstances, petitioner proved by clear and convincing evidence that the father failed to substantially plan for the children's future and, thus, the permanent neglect finding was proper.
Family Court's dispositional finding that it was in the children's best interests to terminate the father's parental rights and free the children for adoption also has a sound and substantial basis in the record. Pursuant to Family Ct Act § 631, following a dispositional hearing, the court has three [*5]options at its disposal: dismiss the petition pursuant to Family Ct Act § 632; suspend judgment pursuant to Family Ct Act § 633; or commit the guardianship and custody of the subject child to the petitioner pursuant to Family Ct Act § 634 (see Family Ct Act § 631 [a]-[c]). "Upon a finding that a child has been permanently neglected, Family Court's sole concern at a dispositional hearing is the best interests of the child[ren] and there is no presumption that any particular disposition, including the return of [children] to a parent, promotes such interests" (Matter of Asiah S. [Nancy S.], 228 AD3d 1034, 1037 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 907 [2024]; see Matter of Nevaeh N. [Heidi O.], 220 AD3d 1070, 1072 [3d Dept 2023], lv denied 41 NY3d 903 [2024]).
At the time of the dispositional hearing, the children were 7½ years old and had been in foster care for nearly their entire lives. They had been living in the same, pre-adoptive, foster home since they were two months old, were thriving in their current placement, and resided there with their half siblings, who had been adopted by the foster parents. The children are strongly bonded with their half siblings and foster parents, have expressed a desire to be adopted, and do not have a relationship with the father. Indeed, the father had not seen the children in-person since 2019 and, between 2016 and 2018 — when he was not steadily incarcerated — had only seen the children in-person 19 times. Following the father's most recent incarceration, he engaged in only sporadic written and telephonic communication. Given the need for permanency and the father's lack of a realistic solution for the children's future, Family Court's determination that it was in the children's best interests to terminate the father's parental rights and to free the children for adoption has a sound and substantial basis in the record (see Matter of Zaiden P. [Ashley Q.], 211 AD3d 1348, 1356 [3d Dept 2022], lvs denied 39 NY3d 911 [2023], 39 NY3d 911 [2023]; Matter of Isabella H. [Richard I.], 174 AD3d 977, 982 [3d Dept 2019]; Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1174-1175 [3d Dept 2018]). To the extent the father argues that he should have been awarded a suspended judgment, we conclude that one was not warranted under the circumstances of this case (see Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1468 [3d Dept 2020], lv denied 36 NY3d 908 [2021]). Similarly, to the extent the father seeks remittal to Family Court to negotiate a "[Family Ct Act] article 6 settlement" that would enable him to maintain contact with the children following their adoption, no such disposition is available once a parent's parental rights have been terminated (see Matter of Hailey ZZ., 19 NY3d at 426). The father's remaining contentions, to the extent not expressly addressed, have been considered and found lacking in merit.
Pritzker, Lynch, Powers and Mackey, JJ., concur.
ORDERED [*6]that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother subsequently surrendered her parental rights to the children.

Footnote 2: During the period between 2018 and 2023, petitioner filed and subsequently withdrew three abandonment petitions against the father.
Footnote 3: The attorney for the children argues that Family Court's order has a sound and substantial basis in the record and should be affirmed.

Footnote 4: The Incarcerated Lookup website maintained by the Department of Corrections and Community Supervision reveals that the father was released to parole supervision on August 27, 2025 and that his maximum postrelease supervision date is three years later.
Footnote 5: The caseworker confirmed that that correctional facility offered all but one of the required services — i.e., parenting classes — and that the correctional facility to which the father was subsequently transferred offered that service.

Footnote 6: The father did not identify the girlfriend as a custodial resource.