Matter of Aliano E. (Alan E.)
2026 NY Slip Op 03488
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Aliano E., Alleged to be a Permanently Neglected Child. Ulster County Department of Social Services, Respondent; Alan E., Appellant.

Decided and Entered:June 4, 2026
CV-25-0049
Calendar Date: April 29, 2026
Before: Clark, J.P., Aarons, Pritzker, Mackey And Corcoran, JJ.

Constantina Hart, Kauneonga Lake, for appellant.
Ulster County Department of Social Services, Kingston (Rebecca L. Balzac of counsel), for respondent.
Daniel P. Moskowitz, Monticello, attorney for the child.

[*1]
Corcoran, J.
Appeal from an order of the Family Court of Ulster County (Anthony McGinty, J.), entered November 26, 2024, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of a son (born in August 2022) who is the subject of these proceedings. At the time of the child's birth, the father was incarcerated. In September 2022, the child was removed from the mother's custody due to her drug use and placed in petitioner's care and custody. The child has remained in foster care with the same foster family since then. The father suspected that he could be the father before his paternity was formally established in May 2023, and he attended court conferences in the removal proceeding against the mother which led to the kinship foster care placement.FN1 Petitioner commenced this proceeding in January 2024 to adjudicate the child permanently neglected and to terminate the father's parental rights. Following fact-finding and dispositional hearings, Family Court determined the child to be permanently neglected and terminated the father's parental rights. The father appeals from the order of disposition, and we affirm.FN2
The father argues reversal is required because petitioner did not make diligent efforts to strengthen the parental relationship. We disagree. As relevant here, a permanently neglected child is one "who is in the care of an authorized agency and whose parent or custodian has failed for a period of . . . at least one year or [15] out of the most recent [22] months following the date such child came into the care of an authorized agency . . . [to] plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]; see Matter of Jack V. [Jack U.], 243 AD3d 1174, 1175 [3d Dept 2025]). "Thus, in a permanent neglect proceeding, the petitioner bears the burden of proving by clear and convincing evidence, first, that it made such diligent efforts, and, second, that the respondent failed to plan for the child's future" (Matter of Gina P. [Shannon O.], 242 AD3d 1328, 1329 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied ___ NY3d ___ [May 21, 2026]; see Social Services Law § 384-b [7] [a]). "A diligent effort is one that is practical and reasonable and designed to ameliorate the problems preventing reunification and strengthen the family relationship" (Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1078 [3d Dept 2018] [internal quotation marks and citations omitted]). "When a parent is incarcerated, an agency may fulfill its duty to make such diligent efforts by, for example, apprising the incarcerated parent of the child's well-being, developing an appropriate service plan, investigating [*2]possible placement of the child with relatives suggested by the parent, responding to the parent's inquiries and facilitating telephone contact between parent and child" (Matter of Jace N. [Jessica N.], 168 AD3d 1236, 1237 [3d Dept 2019] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 32 NY3d 918 [2019]; see Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1171 [3d Dept 2018]). If this burden is satisfied, "the issue becomes whether the parent substantially planned for the child's future" (Matter of Jace N. [Jessica N.], 168 AD3d at 1237 [internal quotation marks, brackets and citations omitted]). "In assessing whether petitioner has demonstrated permanent neglect, we accord great weight to the factual findings and credibility determinations of Family Court, and its findings will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Jack V. [Jack U.], 243 AD3d at 1176 [internal quotation marks and citations omitted]).
Here, the record supports Family Court's determination that petitioner made diligent efforts to encourage and strengthen the parental relationship during the father's incarceration. At the fact-finding hearing, petitioner presented testimony from its caseworker and a foster care unit case planner which established that petitioner maintained regular contact with the father during his incarceration by sending letters, photographs and updates regarding the child and by inviting the father to participate in service plan reviews. Petitioner also suggested how the father could develop a relationship with the child, including by filing for visitation and requesting a transfer to a correctional facility located closer to the child. Both witnesses described the practical barriers to forming a relationship between the father and the child, including the physical distance between them, which would have required the then-two-year-old child to travel four hours to and from the facility and obviated any requirement that petitioner arrange for in-person visitation (see Matter of Jace N. [Jessica N.], 168 AD3d at 1238; Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1087 [3d Dept 2017], lv denied 30 NY3d 908 [2018]). Additionally, the child was too young to receive letters or meaningfully participate in telephone contact. Petitioner explored the possibility of video visitation, but those services were unavailable at the correctional facility where the father was incarcerated. When the father requested telephone contact, petitioner acknowledged that it would benefit the child to hear the father's voice and made the necessary arrangements. Petitioner offered to assist the father with emergency housing and employment resources upon his July 15, 2025 anticipated conditional release. Under these circumstances, we are satisfied that petitioner established, by clear and convincing evidence, that it made diligent efforts to encourage and strengthen the father's relationship with the child[*3](see Matter of Duane FF. [Harley GG.], 154 AD3d at 1087-1088; Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897-898 [3d Dept 2017], lv denied 30 NY3d 905 [2017]).
Despite petitioner's diligent efforts, the father failed to substantially plan for the child's future. "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child['s] initial removal from the home" (Matter of Walter DD. [Walter TT.], 152 AD3d at 898 [internal quotation marks and citations omitted]). "The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative" (Social Services Law § 384-b [7] [c]; see Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1070 [3d Dept 2018], lvs denied 32 NY3d 908 [2018], 32 NY3d 908 [2018]). Here, the father's plan for the child to remain in foster care until his release was unrealistic and infeasible, "as an unnecessarily protracted stay in foster care is not in a child's best interests" (Matter of Jack V. [Jack U.], 243 AD3d at 1178; see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 431 [2012]; Matter of Timothy GG. [Meriah GG.], 163 AD3d at 1070; Matter of Brielle UU. [Brandon UU.],167 AD3d at 1173). Nor did the father identify a suitable custodial resource during the relevant period. The father testified that he suggested two potential custodians, but his failure to provide sufficient contact information for one candidate hindered meaningful investigation. He also suggested the mother of his other children, but when he finally provided her address and phone number two months after the permanent neglect petition was filed, the child had been in foster care for 18 months (see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d at 427-431; Matter of Timothy GG. [Meriah GG.], 163 AD3d at 1071). Additionally, the father explained that he was the custodial parent of his other children because their mother had experienced a "nervous breakdown" at one point, casting doubt on her candidacy to act as a temporary custodian for the child.FN3 With respect to his own plans upon release from incarceration, the father testified vaguely that he might reside with a friend or relatives, but he could not specify where or with whom. Similarly, although he received training for certain types of employment both before and during his incarceration, the father had not secured a job upon his release. Under these circumstances, there is a sound and substantial basis in the record establishing that the father failed to substantially plan for the child's future and, thus, the permanent neglect finding was proper (see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d at 431; Matter of Jack V. [Jack U.], 243 AD3d at 1178-1179; Matter of Jace N. [Jessica N.], 168 AD3d at 1239).
We further conclude that, contrary to the father's contention, given the need for permanency and the father's lack of a realistic plan for the child's future, Family Court's determination that it was in the child's best [*4]interests to terminate the father's parental rights rather than enter a suspended judgment has a sound and substantial basis in the record. "At a dispositional hearing, the focus is the child's best interests" (Matter of Jace N. [Jessica N.], 168 AD3d at 1239 [citation omitted]). "There is no presumption that reunification with a parent is in a child's best interests, and a suspended judgment may be appropriate if it is in the best interests of the child to allow the parent additional time to improve parenting skills and demonstrate his or her fitness to care for the child" (id. at 1239-1240 [internal quotation marks and citations omitted]). Testimony at the dispositional hearing revealed that the child has resided with the same foster family in a stable and loving environment since he was four weeks old. The foster parents have consistently met the child's medical and developmental needs, and the foster mother, who remains at home, ensures that those needs, including any therapeutic services, are addressed. The child is fully integrated into the foster family, which includes other children, and he benefits from extended family support nearby. The placement also facilitates the child's continued relationship with a half sibling who is related to the foster parent. The foster family expressed a clear desire to adopt the child, thereby providing permanency and stability. In contrast, the father remained incarcerated at the time of the dispositional hearing and he did not present a feasible plan for reunification.FN4 His testimony reflected only general intentions to remain in Ulster County, where the child resided. The father's driver's license was suspended due to unpaid child support obligations, such that he intended to rely on an electric bicycle to maintain contact with the child. He also suggested that the child could reside in a two-bedroom apartment in Ulster County occupied by the mother of his three daughters, with undetermined sleeping arrangements. Thus, considering the record in its entirety, including the child's need for permanency after two years in foster care, we find that termination of the father's parental rights, rather than a suspended judgment as urged by respondent, is in the child's best interests (see Matter of Jack V. [Jack U.], 243 AD3d at 1179-1180; Matter of Ronaldo D. [Jose C.], 177 AD3d 1217, 1220 [3d Dept 2019], lv denied 35 NY3d 906 [2020]; Matter of Jace N. [Jessica N.], 168 AD3d at 1240; Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1175).FN5
Clark, J.P., Aarons, Pritzker and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1
The child's mother conditionally surrendered her parental rights in April 2024.

Footnote 2
The father's brief purports to appeal from Family Court's decisions after fact-finding and disposition; while no appeal lies as of right from a nondispositional order in a permanent neglect proceeding (see Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1170 n 1 [3d Dept 2018]), his notice of appeal correctly identifies the order of disposition as the only order appealed from (see CPLR 5512 [a]; Family Ct Act § 1112 [a]; Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1291 n [3d Dept 2019]).

Footnote 3
The hearing record revealed petitioner's practice of passively awaiting contact from custodial resources, even when a caseworker had specific contact information for them. A petitioning agency may establish its diligent efforts by "investigating possible placement of the child with relatives suggested by the [incarcerated] parent" (Matter of Jace N. [Jessica N.], 168 AD3d at 1237 [internal quotation marks and citations omitted]), which contemplates affirmative action by the agency and not merely waiting for a potential resource to initiate contact.

Footnote 4
According to the Incarcerated Lookup maintained by the Department of Corrections and Community Supervision, the father was released to parole supervision on July 15, 2025.

Footnote 5
The attorney for the child, while acknowledging that the matter presented a close question, ultimately supported petitioner's position that the child was permanently neglected and that termination of parental rights was in the child's best interests.